UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:21-CR-00611-MTS |
| DAMONTA BRIDGES, | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

The parties hereby agree, as follows:

### 1. PARTIES:

The parties are Defendant Damonta Bridges, represented by defense counsel Evan Greenberg, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

**A.** **The Plea:** Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Counts One, and Three, the Second Superseding Indictment, the United States agrees to dismiss Count Two at the time of sentencing and that no further federal prosecution will be brought in this District relative to Defendant's

violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment or set forth in St. Louis Metropolitan Police Department Report 21032322.

  **B.**   **The Sentence**: The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties further agree to jointly recommend a sentence of **137 months' imprisonment.** The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document, or to the joint recommendation regarding sentencing range.

**3. ELEMENTS:**

  As to Count One, Defendant admits to knowingly violating Title 18, United States Code, Section 1951, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

  (i)   Defendant obtained, or attempted to obtain property, from a commercial establishment engaged in interstate or foreign commerce;

  (ii)   Defendant did so in the presence of another and against their will, through the wrongful use of actual or threatened force, violence, or fear of injury; and,

  As a result of Defendant's actions, interstate commerce was obstructed, delayed, or affected.

  As to Count Three, the Defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

(i) The Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;

(ii) The Defendant, thereafter, knowingly possessed a firearm;

(iii) At the time the Defendant knowingly possessed a firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and

(iv) The firearm was transported across a state line at some point during or before the Defendant's possession of it.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

<u>Facts Related to August 9, 2021, Incident</u>

On or about August 9, 2021, officers responded to a robbery just occurred at 12135 Bellefontaine Road, within the Eastern District of Missouri. The caller noted that a black female and a black male took money from the register and caller's purse. Both parties got into a gold four door vehicle, with no license plate but a temp tag was present. Officers contacted the victim, K.W. who indicated she was attempting to give the customer, McFadden, change for a five-dollar bill and she was robbed at gunpoint. When McFadden entered the store, she started asking questions, including asking if a manager was on duty to which the victim indicated there was no manager on duty. While pointing the firearm at the victim, McFadden stated "give me everything out the drawer right now." The victim provided McFadden with approximately $630.

McFadden then told the victim to lay on the ground and instructed Defendant to watch the victim. There is camara footage of the incident showing the Defendant, picking up items in the store and constantly looking out the store window to ensure no one was coming. The Defendant can also be seen picking up cellphones that belonged to the Boost Mobile store and sticking them in his satchel. When McFadden returned from the back room, both Defendant, and McFadden exited the store. The total, combined value of the stolen merchandise and cash was approximately $4,629.92. During the investigation, fingerprints were lifted from one of the items the Defendant was seen touching in the video surveillance. That fingerprint was analyzed and determined to be that of the Defendant.

The Defendant admits to entering the boost mobile with the intent to commit Robbery. The Defendant admits to working with McFadden to aid, abet each other and affect commerce by robbing the Boost Mobile. The Defendant admits that the Boost Mobile is a commercial establishment engaged in interstate or foreign commerce and it is in the business of buying and selling merchandise that has been previously transported in interstate or foreign commerce.

<u>Facts Related to September 5, 2021, Incident</u>

On September 5, 2021, the Defendant was in a reported stolen vehicle, in connection with a carjacking that happened earlier that day. Notably, the Defendant was the passenger of that vehicle, and McFadden was the driver. Officers with St. Louis County police Department spotted the vehicle and attempted to conduct a traffic stop, at which time, a chase ensued. During the chase, officers observed a firearm being tossed from the passenger side window where the Defendant was seated. The vehicle eventually crashed, and the Defendant exited the passenger side of the vehicle and was soon after captured. The firearm was retrieved and determined to be

a Stoeger 9mm semiautomatic pistol.

The Defendant admits to possessing the Stoeger on September 5, 2021. Prior to September 5, 2021, the Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time the Defendant knowingly possessed the firearm, he knew he was a convicted felon.

A trained firearms expert determined that the firearm was manufactured outside the State of Missouri and, therefore, had been transported across state lines and in interstate commerce prior to or during Defendant's possession of it. The firearm functioned as designed, and therefore meets the definition of a "firearm" under federal law.

## 5. **STATUTORY PENALTIES:**

As to Count One, Defendant fully understands that the maximum possible penalty provided by law is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

As to Count Three, Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

## 6. **U.S. SENTENCING GUIDELINES:  2021 MANUAL:**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History

Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### A. Offense Conduct

**COUNT ONE: INTERFERENCE WITH INTERSTATE OR FOREIGN COMMERCE BY ROBBERY**

(i) **Chapter 2 Offense Conduct:**

(a) **Base Offense Level:** The parties agree that the base offense level for Count Three is 20, as found in Section 2B3.1(a).

(b) **Special Offense Characteristics:** The parties agree that the following Special Offense Characteristics apply to Count One: The parties agree that 5 levels should be added because a firearm was brandished at the time of the Robbery.

(ii.) **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section

3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**COUNT THREE: Felon in Possession of a Firearm**

 (ii) **Chapter 2 Offense Conduct:**

  (a) **Base Offense Level:** The parties agree that the Base Offense Level is found in Section 2K2.1(a) and depends on, among other things, the nature of the Defendant's criminal history and the characteristics of the firearm. The Base Offense Level may also be determined under Section 4B1.4 if Defendant is determined to be an Armed Career Criminal.

  (b) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: none at this time

 (ii.) **Chapter 3 Adjustments:**

  (1). **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with

Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

(iii.)   **Estimated Total Offense Level:** The parties agree that the Total Offense Level as to Count One is 23. The Total Offense Level as to Count Three will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above, unless Defendant is an Armed Career Criminal. Depending on the underlying offense and Defendant's criminal history, Defendant could be an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. If the Court finds Defendant is an Armed Career Criminal, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not an Armed Career Criminal.

## AS TO ALL COUNTS (ONE and THREE)

B.   **Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

C.   **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any

Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**A.     Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(i)     Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(ii)     Sentencing Issues:** In the event the Court accepts the plea and sentences the Defendant consistent with the parties' jointly recommended sentence or below, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant consistent with the parties' jointly recommended sentence, or above.

**B.     Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C.     Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    A.    **Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    B.    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

    C.    **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

    D.    **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of sentencing. Money paid by

Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **E.**   **Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **F.**   **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately. In addition, the Court may impose restitution (in addition to any penalty authorized by law) which will also be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. Defendant agrees to provide full restitution to all victims of all charges in the Second Superseding Indictment.

  **G.**   **Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between Defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 8/28/23<br>Date | _____<br>ASHLEY M. WALKER, #67175<br>Assistant United States Attorney |
| 8.28.23<br>Date | _____<br>DAMONTA BRIDGES<br>Defendant |
| 8.28.23<br>Date | _____<br>EVAN GREENBERG<br>Attorney for Defendant |